UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AS PTO, LLC, a Florida Limited Liability Company; PLASTIC 2 OIL OF CLEARWATER 1, LLC, a Delaware Limited Liability Company authorized to do business in the State of Florida; and ES RESOURCES, LLC, a Florida Limited Liability Company;

    Plaintiffs,

v.

JBI, Inc., a Nevada Corporation doing business in the State of Florida,

    Defendant.
_____/

CASE NO.: _____
State Court Case No. 13-3971-CI

## DEFENDANT JBI, INC.'S NOTICE OF REMOVAL

Defendant JBI, INC. ("JBI") files its Notice of Removal of the above cause from the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, where same is now pending under Case No. 13-3971-CI, to the United States District Court for the Middle District of Florida, Tampa Division, and respectfully represents and shows unto the Court the following:

### I. BACKGROUND

This business liability breach of contract case was commenced with a complaint filed by AS PTO, LLC ("AS PTO"), PLASTIC 2 OIL OF CLEARWATER 1, LLC ("P2O CLEARWATER"), and ES RESOURCES, LLC ("ES") (collectively "Plaintiffs"), in the Sixth Judicial Circuit in and for Pinellas County, Florida, on April 11, 2013. As required by 28 U.S.C. § 1446(a) and Local Rule 4.02(b), attached as **Exhibit A**[1] are copies of all process, pleadings, and orders filed in the state court.

---

[1] Per the clerk of the Court's request, the Complaint has been separated into a separate PDF for the docket

27091312.2

Plaintiffs allege JBI breached and failed to proceed under one or more agreements, including an Area Development Agreement, an Operating Agreement, an Intellectual Property Master Licensing Agreement, and a Right To Acquire Agreement, all such breaches occurring in the State of Florida. *See* Complaint ¶¶ 13, 20, 26, 32.

## II. REMOVAL IS PROPER TO THE UNITED STATES DISTRICT COURT UNDER 28 U.S.C. § 1332

Removal is proper under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

### A. Complete Diversity of Citizenship Exists Between the Parties

Complete diversity of citizenship exists between the parties. In the complaint, Plaintiffs make no allegations concerning their "citizenship," but they each allege their states of incorporation and their principal places of business. AS PTO alleges it is a Florida limited liability company with its principal place of business in Pinellas County, Florida. *See* Complaint ¶ 2. P2O CLEARWATER alleges it is a Delaware limited liability company with its principal place of business in Pinellas County, Florida. *See* Complaint ¶3. ES alleges it is a Florida limited liability company with its principal place of business in Pinellas County, Florida. *See* Complaint ¶ 4. Importantly, however, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

*Plaintiff AS PTO.* According to the records publicly available on Florida's Division of Corporations' website, AS PTO is, and at the time of the filing of the Complaint was, a limited liability company whose sole shareholder (member) is an individual named Albert Sousa.

---

and to prevent multiple copies of the same document being placed on the electronic filing system.

27091312.2            2

Publicly available records show that Albert Sousa has maintained a Florida address since at least 2003. Publicly available records also show that Sousa holds a Florida driver's license, a Florida motor vehicle registration, is a registered voter in Florida, and owns property in Florida. Albert Sousa (the only member of AS PTO) is a citizen of the State of Florida. Consequently, at all times relevant, AS PTO is, and was at the time of filing this action, a Florida citizen for purposes of determining diversity of citizenship.

*Plaintiff ES.* According to the records publicly available on Florida's Division of Corporations' website, ES is, and at the time of the filing of the Complaint was, a limited liability company whose sole shareholder (member) is an individual named Mark Lagos (also known as Markos Lagos). Publicly available records show that Mark Lagos has maintained a Florida address since at least 1986. Publicly available records also show that Lagos holds a Florida driver's license, a Florida motor vehicle registration, is a registered voter in Florida, and owns property in Florida. Mark Lagos (the only member of ES) is a citizen of the State of Florida. Consequently, at all times relevant, ES is, and was at the time of filing this action, a Florida citizen for purposes of determining diversity of citizenship.

*Plaintiff P2O CLEARWATER.* According to the Operating Agreement attached as Exhibit C to the Complaint, P2O CLEARWATER is, and at the time of the filing of the Complaint was, a limited liability company whose members are Markos Lagos (also known as Mark Lagos), Andrew J. Lynn, Plaintiff ES, and Plaintiff AS PTO.[2] Publicly available records show that all four of these members are citizens of Florida. As explained above, Mark Lagos,

---

[2] At the time that the Operating Agreement was executed, Plastic2Oil Land, Inc. was also a member of P2O CLEARWATER. However, per the allegations in the Complaint, Plastic2Oil Land, Inc. was a dissolved corporation at the time that the Complaint was filed, and, thus, was no longer a member of P2O Clearwater at the time that the Complaint was filed. *See* Complaint ¶6. Accordingly, because "[d]iversity is determined when the suit is instituted, not when the cause of

27091312.2                                3

ES, and AS PTO are citizens of Florida. Publicly available records show that Andrew J. Lynn has maintained a Florida address since at least 1975. Publicly available records also show that Andrew J. Lynn holds a Florida driver's license, a Florida motor vehicle registration, is a registered voter in Florida, and owns property in Florida. Andrew J. Lynn is a citizen of the State of Florida. Thus, all four of P2O CLEARWATER's members are citizens of the State of Florida. Consequently, at all times relevant, P2O CLEARWATER is, and was at the time of filing this action, a Florida citizen for purposes of determining diversity of citizenship.

*Defendant JBI.* Plaintiffs allege accurately that JBI is a Nevada corporation, and at the time this action was filed its principal place of business was Niagara Falls, New York. *See* **Exhibit B**. For purposes of diversity jurisdiction, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State in which it has its principal place of business." 28 U.S.C. § 1332(c) (1). Accordingly, JBI is a citizen of Nevada and New York.

Plaintiffs are not citizens of Nevada or New York. Therefore, there is complete diversity of citizenship between Plaintiffs AS PTO, P2O CLEARWATER, and ES, and the Defendant, JBI.

B.   **The Amount in Controversy Exceeds $75,000.00, Exclusive of Interest and Costs.**

The amount in controversy requirement of 28 U.S.C. § 1332 also is satisfied. Plaintiffs made no specific monetary demand for relief in their complaint other than to allege that their damages exceeded $15,000.00. *See* Complaint ¶¶ 1, 21, 27, 33. Nonetheless, preventing a district judge from acknowledging the value of the claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010). This rule would reward plaintiffs for employing

---

action arose," *Jones v. Law Firm of Hill and Ponton*, 141 F. Supp. 2d 1349, 1354-55 (M.D. Fla. 2001), Plastic2Oil Land, Inc.'s citizenship is irrelevant to the diversity analysis.

27091312.2                                             4

the kinds of manipulative devices against which the Supreme Court has admonished the courts to be vigilant. *Id.* For instance, a plaintiff could "defeat federal jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no details on the value of the claim." *Id.* Plaintiffs skilled in this form of artful pleading could, with this "trick," simply "make federal jurisdiction disappear." *Id.* When a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate. Otherwise, a defendant could wrongly be denied the removal to which it is entitled. *See id.* "The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). And, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.*

1. **It is facially apparent from the Complaint that the amount in controversy exceeds $75,000.00 exclusive of interest and costs.**

Although the Complaint alleges only damages in excess of $15,000.00, reference to the exhibits attached provide a clear indication that the amount in controversy exceeds $75,000.00. Plaintiffs allege AS PTO solicited investments as reflected in a Reservation Agreement attached as Exhibit B to the Complaint. *See* Complaint ¶ 10. The deposit made pursuant to the Reservation Agreement was $100,000.00. Plaintiffs further allege JBI failed to proceed under the Area Development Agreement ("ADA"), attached as Exhibit A to the Complaint. *See* Complaint ¶ 13. A fair reading of the Complaint and the attached exhibits make it clear that AS PTO will claim the loss of the deposit made pursuant to the Reservation Agreement ($100,000.00). This, by itself, provides facially apparent evidence that the amount in

controversy exceeds the jurisdictional limit.

The ADA has attached to it its own Exhibit A, which also provides facially apparent evidence of the amount in controversy exceeding the jurisdictional limit. Exhibit A to the ADA states "the transaction contemplates that Licensor will finance the start up of at least nineteen (19) units projected for completion within the 24 month period subsequent to the validation procedures ... as defined herein."[3] Exhibit A to the ADA also contains a chart showing the "Range of Expected Start-up Costs." The range of the total funding required for each unit that was to be financed by JBI is $525,000.00 to $1,330,000.00. Plaintiffs allege JBI failed to proceed under the ADA, thus claiming JBI failed to provide financing of at least nineteen units costing a range of $525,000.00 to $1,330,000.00, for a total amount of at least $9,975,000.00 to $25,270,000.00. A fair reading of the Exhibit A to the ADA which is attached to the Complaint indicates if JBI failed to proceed as alleged, then the damages allegedly suffered by AS PTO from its inability to obtain financing far exceed the $75,000.00 jurisdictional limit of this Court.

2. **The amount in controversy also may be ascertained from Plaintiffs' demand letter.**

Here, Plaintiffs' attorney made a demand on behalf of all three Plaintiffs for a total sum of $4,000,000.00 in a March 8, 2013 letter to JBI's corporate officers. (*See* **Exhibit C - -** enclosures omitted.) He described Plaintiffs' claimed commercial injuries and damages in detail, alleging a loss of net annual income to P2O CLEARWATER of an amount exceeding $2,293,000.00, as well as losses of net income to AS PTO's licensees in an amount exceeding $55,000,000.00, which in turn would have allegedly resulted in a loss of reasonably expected

---

[3] "Licensor" in the ADA is Plastic2Oil Land, Inc., which Plaintiffs allege is the alter ego of JBI. See Complaint ¶ 7. Thus, without admitting the claim of alter ego, for purposes of the allegations of the Complaint and Exhibit A to the ADA, Licensor should be considered to be JBI.

income to AS PTO.[4] By return correspondence to Plaintiffs' counsel, General Counsel of JBI rejected the settlement demand. (*See* **Exhibit D**.)

As a document that existed at the time of removal, the demand letter and the facts contained therein are permissible evidence of the amount in controversy. *See Pretka*, 608 F.3d at 755; *see also AAA Abachman Enterprises, Inc. v. Stanley Steemer Int'l, Inc.*, 268 F. App'x 864, 866 (11th Cir. 2008) (considering demand letter when deciding amount in controversy); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428-30 (7th Cir. 1997) (holding that a settlement offer is properly consulted in determining "plaintiff's assessment of the value of her case"); *Wilson v. Belin*, 20 F.3d 644, n. 8 (5th Cir. 1994) ("Because the record contains a letter, which plaintiff's counsel sent to defendants stating that the amount in controversy exceeded $50,000, it is 'apparent' that removal was proper."); *Faulk v. Husqvarna Consumer Outdoor Products N.A., Inc.*, 849 F. Supp. 2d 1327, 1332 (M.D. Ala. 2012) ("When considering a demand letter to establish the amount in controversy, the court should leave some room for posturing, but also should view the amount demanded as relevant evidence of the true amount in controversy.").

The March 8, 2013 demand letter for $4,000,000.00 that itemized a loss of net income to P2O CLEARWATER of "no less than $2,293,000.00" standing alone, easily satisfies the amount in controversy. *See Bronick v. State Farm Mut. Auto. Ins. Co.*, CV-11-01442-PHX-JAT, 2011 WL 5592898, *4 (D. Ariz. Nov. 17, 2011) ("Plaintiff has put forth in a detailed demand letter that she is entitled to collect $100,000 as further compensation for her injuries; Defendant

---

[4] Where the other elements of jurisdiction are present and at least one named plaintiff satisfies the amount-in-controversy requirement, district courts can exercise supplemental jurisdiction over the claims of the other plaintiffs in the case. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549, 125 S. Ct. 2611, 2615, 162 L. Ed. 2d 502 (2005).

disagrees with this assessment. Thus, the amount in controversy exceeds $75,000."); *see also Faulk*, 849 F. Supp. 2d at 1332.

In *Bowen v. State Farm Mutual Auto. Ins. Co.*, 2010 WL 1257470, (M.D. Fla. Mar. 29, 2010) the defendant filed a notice of removal with an attached exhibit of plaintiff's written demand letter requesting a $100,000.00 settlement. The demand offered plaintiff's counsel's opinion that a reasonable settlement value was "well in excess of the policy limits [$100,000] for which we hereby make demand." In denying plaintiff's motion to remand, the court held that a demand letter for $100,000 constitutes "legally certain evidence that Plaintiff seeks damages in excess of $75,000." *Id.* at *3.

In *Ralph v. Target Corp.*, the defendant timely removed the case, including as exhibits to its Notice of Removal, a copy of plaintiff's written demand letter requesting a $100,000.00 settlement. 2009 WL 3200680 (M.D. Fla. Sept. 30, 2009). The demand letter stated unequivocally the opinion "that a reasonable settlement value for [plaintiff's] claim for bodily injuries, impairments, damages, and losses is well in excess of $100,000.00 for which we hereby make a demand." The court found the demand letter constituted legally certain evidence that the plaintiff was seeking damages in excess of $100,000.00, and thus the defendant met its jurisdictional burden that the amount in controversy exceeds $75,000.00. *Id.* at *3.

Similarly, in *Scott v. Home Depot U.S.A., Inc.*, the plaintiff made a pre-suit demand for $500,000 based on "the actual out of pocket expenses to date and absolute certainty of future expenses." 2012 WL 86986 (S.D. Fla. Jan. 11, 2012). The letter explained the treatment that plaintiff underwent for his leg and his lower back after the accident and represented that plaintiff's medical bills, as of the date of the letter, totaled $38,462.27. The plaintiff's orthopedic surgeon recommended an evocative discography of the lumbar spine with disc decompression under fluoroscopy and assigned an 8% permanent physical impairment of the body as a whole

for the lumbar spine. Even though the demand letter lacked amounts for future medical expenses and lost wages, the *Scott* court ruled: "Based on Plaintiff's injuries, his surgery, and his permanent physical impairment, as well as the $38,462.27 in medical expenses already incurred and the Court's own judicial experience and common sense, the undersigned finds that a preponderance of the evidence shows that the amount in controversy exceeds $75,000." *Id.* at *3. *See also Katz v. J.C. Penney Corp., Inc.*, 2009 WL 1532129, at *5 (S.D. Fla. June 1, 2009) ("[T]he Court is persuaded that the pre-suit demand package reflects an honest assessment of damages by Plaintiffs because it is based on medical records provided by the Plaintiff. . . . [E]ven if this Court were to exclude the future medical expenses as speculative, the other damages such as pain and suffering that are being sought by Plaintiffs, if proven, together with the medical costs already incurred by Plaintiffs, support a finding that the jurisdictional amount in controversy has been met."); *Rollo v. Keim*, 2009 WL 1684612, *3 (N.D. Fla. June 16, 2009) (letter estimating value of plaintiffs' claims at $200,000; special damages, together with the likelihood of general damages when such specials are proven, supported $75,000 amount in controversy requirement); *Pate v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 3372195, *2 (N.D. Fla. Aug. 25, 2010) (settlement letter demanding $100,000 to settle considered by court in evaluating the amount in controversy.); *see AAA Abachman Enterprises, Inc.*, 268 Fed. Appx. at 866 (demand letter that sought hundreds of thousands of dollars satisfied amount in controversy requirement where plaintiff "had the opportunity to submit evidence that the claim's value was $75,000 or less in conjunction with its motion for remand to state court but did not do so.").

Therefore, the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and JBI has sufficiently alleged the basis for diversity jurisdiction at the notice-of-removal stage as allowed within the Eleventh Circuit. *See Pretka*, 608 F.3d at 754, 757-60, 772 (reversing the trial court's holding that "a removing defendant [must] submit all of its jurisdiction-supporting

evidence *before* the plaintiff files a motion to remand" and holding that a removing defendant may allege the facts establishing jurisdiction and later "support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations") (emphasis in original).[5]

**C.     Filing Of Removal Papers**

Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action will be promptly served to Plaintiffs' counsel, and a Notice of Filing of Notice of Removal is simultaneously being filed with the Clerk of the Circuit Court in and for Pinellas County, Florida.

**D.     The Notice Of Removal Is Timely**

The complaint was served on JBI on April 30, 2013. Therefore, this Notice of Removal is timely filed within 30 days of JBI's receipt of the initial pleading. Furthermore, 28 U.S.C. § 1446(b) provides that a case may not be removed more than one year after commencement of the action, and this action commenced on April 11, 2013. Because this notice is being filed in compliance with the time constraints set forth in 28 U.S.C. §1446(b), this notice is timely filed and removal based on diversity jurisdiction is proper.

**III.     CONCLUSION**

Thus, the state court action may be removed to this Court in accordance with the provisions of 28 U.S.C. § 1441(a) because (i) this action is a civil action pending within the

---

[5] *See also Bay Vill. of Sarasota, Inc. v. Sunday*, 8:11-CV-1594-T-30TGW, 2011 WL 3516123, *2 (M.D. Fla. Aug. 11, 2011) (court must consider "evidence submitted in response to a motion to remand"); *Sparkman v. State Farm Mut. Auto. Ins. Co.*, 3:11-CV-123-J-37TEM, 2011 WL 3269462, *3 (M.D. Fla. Aug. 1, 2011) (removing defendant may "effectively cure[] any defects by filing additional evidence with its response to motion to remand"); *Shaver v. Ford Motor Co.*, 768 F. Supp. 2d 1235, 1236-37 (S.D. Fla. 2011) (defendant "is permitted to submit post-removal evidence regarding the amount in controversy" and denying remand based upon defendant's affidavit "attached to its response to the motion to remand" that established the amount in

jurisdiction of the United States District Court for the Middle District of Florida, Tampa Division; (ii) this action is between citizens of different states; and (iii) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Based on the foregoing, JBI has met its burden in establishing that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) and (c) and 28 U.S.C. § 1441.

**WHEREFORE**, Defendant JBI, Inc. hereby removes the above-captioned action from the Sixth Judicial Circuit Court in and for Pinellas County, Florida, and requests that further proceedings be conducted in this Court as provided by law.

Respectfully submitted,

/s/ Amanda Arnold Sansone

Gregory M. Cesarano
Florida Bar No. 217761
CARLTON FIELDS, P.A.
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
Email: gcesarano@carltonfields.com

and

Amanda Arnold Sansone
Florida Bar Number 587311
Jacqueline R. Ambrose
Florida Bar Number 0085700
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., Suite 1000 (33607)
Post Office Box 3239
Tampa, Florida 33601
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
Email: asansone@carltonfields.com
jambrose@carltonfields.com

controversy at the time of removal).

*Attorneys for Defendant JBI, Inc.*

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of this notice was sent via e-mail and U.S. mail to J. Marshall Fry at jmfryatty@aol.com this 20th day of May, 2013.

_____
Attorney